IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ADAM SMITH,                       )
                                  )
        Plaintiff,                )
                                  )
    v.                            )    No. 11 C 2945
                                  )
VILLAGE OF HAZEL CREST, et al.,   )
                                  )
        Defendants.               )


**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Sgt. Lewis' (Lewis), Defendant Sgt. Preston's (Preston), Defendant Derek Bryant's (Bryant), Defendant Derrick Chambliss' (Chambliss) (collectively referred to as "Defendant Officers"), and Defendant Village of Hazel Crest's (Village) motion for summary judgment. For the reasons stated below, the motion for summary judgment is granted.

**BACKGROUND**

On December 7, 2009, Plaintiff Adam Smith (Smith) attended a court hearing relating to the custody of his son. After the hearing, Smith consumed alcohol and

1

returned to the residence (Residence) of his sister, Donna Hawkins (Hawkins), where he resided. Smith was angry because of the court hearing and broke various items in the Residence. After getting into an oral argument with Hawkins, Smith went into his room where, he claims he went to sleep. Hawkins then called the police to the Residence. Defendant Officers, who worked for the Village, responded to the disturbance.

After entering the Residence, Defendant Officers opened Smith's bedroom door and told Smith to show his hands and get on the floor. When Smith did not comply, Lewis shot a pepper ball launcher into Smith's room. Smith contends that he was then handcuffed and taken outside, where he was tased before being placed in an ambulance. Smith includes in his second amended complaint excessive force claims brought pursuant to 42 U.S.C. § 1983 (Section 1983) (Count I), intentional infliction of emotional distress (IIED) claims (Count II), a Section 1983 *Monell* claim (Count III), and an indemnity claim (Count IV). Defendants moved to dismiss the claims brought in Counts II and III, and the indemnity claim brought in Count IV as it related to the state law claims, and on February 29, 2012, the court granted the motion to dismiss. Defendants now move for summary judgment on the excessive force claims in Count I.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Defendants argue that the undisputed facts indicate that certain Defendants were not involved in any use of force on Smith and that no reasonable trier of fact

could conclude other than that Defendants did not use excessive force. Defendants also argue that they are entitled to summary judgment based on qualified immunity.

I. Personal Involvement in Force

Defendants contend that there is no evidence showing that Bryant or Preston used any force on Smith. In order to hold an individual liable under Section 1983, a plaintiff must establish the individual's "'personal involvement in the alleged constitutional deprivation.'" *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010)(quoting *Palmer v. Marion County,* 327 F.3d 588, 594 (7th Cir. 2003)). It is undisputed that Bryant and Preston assisted in the arrest of Smith. (RSF Par. 8-9). However, there is no evidence indicating that Bryant or Preston took part in exerting any force upon Smith during the arrest. Although Smith asserts that the "officers" shot him with the pepper ball launcher, (SAF Par. 22), there is no evidence that indicates that anyone other than Lewis fired the pepper ball launcher. (R SF Par. 22). In regard to the taser, Smith acknowledged that Chambliss tased him, and although Smith speculated at his deposition that he was tased multiple times, he has not presented evidence that shows that any officer other than Chambliss tased him. (R SF Par. 39); (Smith Dep. 89-92); (SF Par. 39). At the summary judgment stage, a plaintiff opposing a defendant's motion for summary judgment cannot rely on mere

4

allegations and instead must put forth sufficient evidence to support the plaintiff's case. Fed. R. Civ. P. 56(e)(2); *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010)(stating that "[s]ummary judgment is the 'put up or shut up' moment in a lawsuit"). In *Hessel v. O'Hearn*, 977 F.2d 299 (7th Cir. 1992), the Seventh Circuit addressed a situation where the plaintiffs claimed that police officers stole cash and personal items from the plaintiffs during searches of plaintiffs' businesses, and, in that case, the plaintiffs were unable to point to evidence indicating which officer or officers stole the cash and items. *Id.* at 304-05. The Court held that the plaintiff could not rely on a "principle of collective punishment as the sole possible basis of liability. . . ." *Id.* at 305 (stating that "[p]roximity to a wrongdoer does not authorize punishment"). Similarly, in the instant action, Smith cannot hold Bryant or Preston liable for excessive force simply because they were present at the arrest. Nor can Smith ask a jury to speculate in the absence of evidence that it may have been Bryant or Preston that fired the pepper ball launcher or used the taser. Smith, who is represented by counsel and who has been given leave to amend the complaint twice, brings only excessive force claims against Bryant and Preston and does not seek to bring a failure to intervene claim against Bryant or Preston. (SA Compl. 3); *see also Sanchez v. City of Chicago*, 700 F.3d 919, 926 (7th Cir. 2012)(stating that "it is possible to hold a named defendant liable for his failure to intervene vis-à-vis the

5

excessive force employed by another officer, even if the plaintiff cannot identify the officer(s) who used excessive force on him"). Therefore, since Smith has failed to point to evidence showing that Bryant or Preston had any personal involvement in the exercise of force upon Smith, Defendants' motion for summary judgment on the claims brought against Bryant and Preston is granted.

II. Reasonableness of Force Used on Smith

Defendants argue that the undisputed facts show that the use of force on Smith during his arrest was reasonable. An excessive force claim is reviewed under a Fourth Amendment "reasonableness standard." *Padula v. Leimbach*, 656 F.3d 595, 602-03 (7th Cir. 2011). The pertinent inquiry for an excessive force claim is "whether, in light of the facts and circumstances that confronted the officer (and not 20/20 hindsight), the officer behaved in an objectively reasonable manner." *Id.* (internal quotations omitted)(quoting *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010)).

B. Use of Pepper Ball Launcher

Defendants contend that the use of the pepper ball launcher was a reasonable use of force. In the instant action, Smith admits that prior to his arrest on December

7, 2009, Smith had a court appearance, which involved custody of his son, and in which Smith was alleged to have hit his son. (R SF Par. 2). Smith admits that after the court hearing, he and a friend drank a pint of alcohol. (R SF Par. 3). Smith testified at his deposition that he "was buzzed" and that he did not "know how drunk [he] was." (Smith Dep. 57-58). Smith also admits that he then returned to the Residence and damaged various items in the Residence. (R SF Par. 4). Smith explained at his deposition that he lost control due to anger and became violent. Smith testified that he "threw a bunch of chairs around," and went into the bathroom and broke the vanity mirror. (Smith Dep. 45). Smith also admits that he kicked a hole in his bedroom door and broke furniture in the Residence. (Smith Dep. 45). Smith testified that he "was so angry," that "[e]verything [he] did was angry," and that he "was very furious about" his court hearing that day. (Smith Dep. 45, 52).

Smith further admits that he got into an oral argument with his sister, who then called the police. (R SF Par. 5). Smith admits that Hawkins informed Defendant Officers upon their arrival at the Residence that Smith had damaged property and was "irate and hostile." (R SF Par. 10). Thus, it is undisputed that when Defendant Officers arrived at the Residence, they were faced with an individual who had been drinking, who had lost control due to anger, and who had been engaged in a series of violent acts in the Residence.

7

Defendant Officers also contend that Hawkins informed Defendant Officers that her sister, Cynthia (Cynthia), had relayed to Hawkins that Smith was suicidal and that Smith had said that he was going to make the police kill him. (SF Par. 11); (Hawkins Dep. 47). Smith disputes those facts, contending that Hawkins never told Defendant Officers such facts. (R SF Par. 11). However, Hawkins never denied during her deposition that she made such statements to Defendant Officers. Hawkins admitted that Cynthia told her of Smith's statement about wanting the police to kill him. (Hawkins Dep. 43). Hawkins also did not dispute Defendant Officers' claim that she told Defendant Officers about the statement by Smith that he wanted the police to kill him. (Hawkins Dep. 43-44). Hawkins merely indicated at her deposition that she did not remember whether she told Defendant Officers about the statement by Smith, and that she "may have. . . ." (Hawkins Dep. 43-44, 47). In addition, there was a record of prior suicidal behavior by Smith. Hawkins indicated at her deposition that Smith had previously stood on a highway overpass threatening to commit suicide and that police had to shut down the highway until Smith finally came down. (Hawkins Dep. 47-50).

Smith also claims that he never stated that he was going to make the police kill him, but Smith admits that his ability to think and recall facts was impaired by alcohol. (Smith Dep. 57-58). Also, whether or not Smith actually made such a

8

statement is irrelevant. The relevant fact is that Defendant Officers were told of such a statement prior to attempting to enter Smith's bedroom. Thus, Defendant Officers were faced with an individual who had indicated a desire to commit suicide through some rash action when police attempted to arrest him. The court also notes that Lewis contends that when he looked into Smith's room, he saw Smith lying in bed with a large knife next to him and Defendants have provided photos of the knife, although Smith claims that he did not have a knife in his bed or on his person. (R SF Par. 17).

    The undisputed facts also show that Defendant Officers were unable to enter Smith's bedroom and approach Smith in a normal, cautious fashion. Smith admits that he had barricaded his bedroom door so that it could only be opened about one foot wide. (R SF Par. 16). Smith also admits that Defendant Officers told him to show his hands and get on the floor and that Smith failed to comply. (R SF Par. 20). Smith claims he was asleep, but even if that was true, Defendant Officers had no way of knowing that Smith was sleeping. Nor did Defendant Officers have any reason to conclude that Smith would be sleeping, considering the fact that Hawkins had just called the police to the Residence and informed them that Smith was "irate and hostile." (R SF Par. 10). Under such circumstances, when faced with a violent individual who had been drinking, and had stated that he desired a fatal confrontation

9

with the police, no reasonable trier of fact could conclude other than that the use of the pepper ball launcher was a reasonable use of force.

### B. Use of Taser

Defendants argue that the use of the taser on Smith was a reasonable use of force. After Defendant Officers handcuffed Smith and took him outside to the ambulance, Smith admits that he continued to orally berate Defendant Officers with profanities. (R SF Par. 33); (Smith Dep. 84). In addition, Smith admits to continuing to physically resist arrest after he was handcuffed. (R SF Par. 38). Defendants contend in their statement of material facts that when Smith was taken to the ambulance he "continued to kick and thrash about," and that he was warned that he would be tased if he continued to resist. (SF Par. 37-38). Smith responds by asserting that he "denies" that "he continued to kick and thrash about," but Smith fails to cite to the record to support such a denial. (R SF Par. 38). Pursuant to Local Rule 56.1, a denial is improper if the denial is not accompanied by specific references to admissible evidence or at least evidence that represents admissible evidence. *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003). Thus, pursuant to Local Rule 56.1, is it deemed undisputed that Smith continued to physically resist Defendant Officers after he was handcuffed. *See Cracco v. Vitran*

*Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009)(stating that "[b]ecause of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, [the Court has] consistently upheld the district court's discretion to require strict compliance with those rules")(internal quotations omitted)(quoting *FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005)). Smith also admits that after he was tased and was finally placed in the ambulance, he "continued to curse and scream while in the ambulance." (R SF Par. 41). Under such circumstances, where police were faced with an individual who had been drinking, had done violent acts, and continued to orally yell and physically resist, no reasonable trier of fact could find other than that the use of the taser was a reasonable use of force. The undisputed evidence shows that Defendant Officers used non-lethal force to protect Defendant Officers as well as Smith himself, who had indicated a desire to be killed by police when they effectuated his arrest.

III. Qualified Immunity

Defendant Officers argue, in the alternative, that they are entitled to summary judgment based on qualified immunity. Governmental actors, such as law enforcement officers, "performing discretionary functions enjoy qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *In re Escobedo v. Bender*, 600 F.3d 770, 778 (7th Cir. 2010)(quoting in part *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), and explaining the significance of *Pearson v. Callahan*, 129 S.Ct. 808 (2009)). To assess whether an officer is shielded from liability by qualified immunity, a court must make two inquiries: "(1) has the plaintiff alleged facts that, if proved, would establish a constitutional violation; and (2) would a reasonable officer have known his actions were unconstitutional in light of clearly established law?" *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010)(indicating that inquiries do not have to be made in a set sequence).

In the instant action, Smith has not pointed to evidence upon which a reasonable trier of fact could find that a constitutional violation occurred. Nor has Smith pointed to sufficient evidence to show that a reasonable officer in the position of Defendant Officers would have understood that his actions were unconstitutional in light of clearly established law. Thus, Defendant Officers are also entitled to summary judgment based on qualified immunity. Based on the above, Defendants' motion for summary judgment is granted.

## CONCLUSION

Based on the foregoing analysis, Defendants' motion for summary judgment is granted.

 _____
 Samuel Der-Yeghiayan
 United States District Court Judge

Dated: January 17, 2013